IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01056–EWN–OES

CONNIE J. REYNOLDS,

     Plaintiff,

v.

COBE CARDIOVASCULAR, INC.,

     Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

     This is an employment discrimination case.  Plaintiff Connie Reynolds alleges that when Defendant reassigned Plaintiff to a new supervisor, issued Plaintiff a disciplinary final written warning, and terminated Plaintiff's employment, Defendant discriminated against her on the basis of her disability, sex, and age, and retaliated against her for engaging in protected opposition, all in violation of Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12101–12213 (2005); Title VII of the Civil Rights Act of 1964 ("Title VII"),  42 U.S.C. § 2000e *et seq.* (2005); and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (2005).  Plaintiff also asserts claims for breach of contract and promissory estoppel, based on Defendant's allegedly retaliatory termination of Plaintiff's employment.  This matter is before the court on Defendant's "Motion for Summary Judgment" and "Defendant's Brief in Support of Motion for Summary

Judgment on All Claims for Relief," filed January 24, 2005.  Jurisdiction is premised upon 28

U.S.C. §§ 1331 and 1343 (2005).

## FACTS

*1.*     ***Factual Background***

Plaintiff is a female who was born on December 10, 1945.  (Compl. ¶¶ 13–14 [filed May

24, 2004] [hereinafter "Compl."].)  Plaintiff worked for Defendant from April 1996 through

September 2003 as a disability case manager and nurse.  (*Id.* ¶ 15; Def.'s Br. in Support of Mot.

for Summ. J. on All Claims for Relief, Statement of Undisputed Material Facts ¶¶ 2, 4 [filed Jan.

24, 2005] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Opp. to Def.'s Mot. for Summ. J, Resp. to

Def.'s Statement of Undisputed Material Facts ¶ 1 [filed Mar. 9, 2005] [hereinafter "Pl.'s

Resp."].)  Every person in Plaintiff's reporting structure was female.  (Def.'s Br., Statement of

Undisputed Material Facts ¶¶ 68; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶

1.)  Since approximately 1996, Plaintiff has had a heart valve condition, which may ultimately

require corrective surgery.  (Def.'s Br., Ex. A at 260–65 [Dep. of Connie Reynolds]; *deemed*

*admitted at* Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶¶ 101, 102, 104,

105.)  Plaintiff's heart condition did not prevent her from performing the essential functions of her

job, and did not affect her major life activities.[1]  (Def.'s Br., Statement of Undisputed Material

_____

[1]In stark contradiction to Plaintiff's assertion in her complaint that her heart condition
limited "one or more" of her major life activities, Plaintiff admits in her response to Defendant's
motion that her heart condition did not affect her major life activities.  (Compl. ¶ 23; *cf.* Def.'s
Br., Statement of Undisputed Material Facts ¶ 76, Ex. A at 265 [Dep. of Connie Reynolds];
*admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)

Facts ¶ 76, Ex. A at 265 [Dep. of Connie Reynolds]; *admitted at* Pl.'s Resp., Resp. to Undisputed

Material Facts ¶ 1.)

Plaintiff's job duties while employed by Defendant included: training, tracking Family and

Medical Leave Act ("FMLA") compliance, administering Defendant's short-term disability policy,

and managing Defendant's workers' compensation and ADA claims.  (Def.'s Br., Statement of

Undisputed Material Facts ¶¶ 5–6; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶

1.)  During Plaintiff's tenure and ostensibly in performance of her job responsibilities, Plaintiff

expressed concerns to her supervisors about Defendant's termination of certain employees and

Defendant's lack of certain employee training.  (Compl. ¶¶ 17, 20, 21, 30.)  Regarding the

employee terminations, Plaintiff states that she raised concerns about "many" employees,

including several whose names she cannot remember.  (Pl.'s Resp., Statement of Additional

Undisputed Material Facts ¶¶ 55, 56.)  By way of illustration, Plaintiff alleges in her response to

Defendant's motion that she complained about discrimination against Jim Russell, but testified in

her deposition that she believed Defendant discriminated against Russell, but never voiced her

concern to anyone.  (*Id.*, Statement of Additional Undisputed Material Facts ¶ 56; *disputed at*

Reply in Supp. of Mot. for Summ. J. on All Claims for Relief ¶ 53, Ex. M at 319 [Dep. of Connie

Reynolds] [filed Apr. 7, 2005] [hereinafter "Def.'s Reply"].)  Plaintiff gives sufficient facts and

information — meaning names, approximate dates, and subject matter — to support her assertion

that she raised concerns about Elizabeth McCarthy, Rose Pass, and Patricia Bardo-Hankie.  (Pl.'s

Resp., Statement of Additional Undisputed Material Facts ¶¶ 50, 53, 55.)  Specifically, in Spring

2002, Plaintiff expressed concern that  Defendant's decision to terminate Elizabeth McCarthy's

-3-

employment while McCarthy was on maternity leave discriminated against McCarthy on the basis

of her sex.[2]  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 97, 98; *admitted at* Pl.'s

Resp., Resp. to Undisputed Material Facts ¶ 1; Pl.'s Resp., Statement of Additional Undisputed

Material Facts ¶¶ 50–53.)  In February 2003, Plaintiff expressed concerns that Defendant's

decision to terminate Rose Pass's employment discriminated against Pass on the basis of Pass's

age and medical condition.[3]  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 101–03;

*admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1; Pl.'s Resp., Statement of

Additional Undisputed Material Facts ¶ 50–53.)  In or around August 2003, Plaintiff raised

concerns that Patricia Bardo-Hankie was being terminated after filing a worker's compensation

claim.  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 104–07; *admitted at* Pl.'s Resp.,

Resp. to Undisputed Material Facts ¶ 1.)

   *a.*      ***Complaints about Plaintiff's Job Performance***

   In August and September 2001, after receiving complaints from other employees about

Plaintiff's job performance, Defendant requested that the Mountain States Employer's Council

("MSEC") investigate Plaintiff.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 13,

---

   [2]Elizabeth McCarthy filed a complaint in this court, in which she alleged claims against
Defendant for breach of contract and discrimination in violation of the FMLA and Title VII.
(*McCarthy v. COBE Cardiovascular Inc.*, case no. 03–cv–00366–EWN–MJW.)  I granted
Defendant's motion for summary judgment on August 30, 2004.  (Order [filed Aug. 30, 2004].)

   [3]Rose Pass filed a complaint in this court, in which she asserted claims against Defendant
for breach of contract, promissory estoppel, and discrimination in violation of the ADA, ADEA,
and Title VII.  Pass v. COBE, case no. 03–cv–01453 (BNB).  On October 20, 2004, Chief Judge
Babcock granted Defendant's motion for summary judgment in the case.  (Order [filed Oct. 20,
2004].)

admitted at Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 3.)  MSEC issued an investigative report stating that Plaintiff's conduct did not constitute illegal harassment, but certain members of Defendant's workforce perceived Plaintiff as uncompassionate.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 14–17; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶¶ 5–7.)

In March 2003, Environmental Safety Manager Craig Snyder approached Carolyn Byram, Plaintiff's supervisor at that time, and conveyed complaints he had received from employees about raising health-related concerns with Plaintiff. (*Id.*, Statement of Undisputed Material Facts ¶ 18; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 8.)  In April 2003, Byram prepared an informal performance review of Plaintiff, stating "[i]t is critical . . . that you are sensitive to what and how you communicate your message to employees." (*Id.*, Statement of Undisputed Material Facts ¶ 20; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)

### b.  *Plaintiff's April 2003 Supervisor Reassignment*

From January 2003 through April 2003, Carolyn Byram supervised Plaintiff.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 7–8; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  In April 2003, Plaintiff was reassigned to a new supervisor, Sharon Oliver. (*Id.*, Statement of Undisputed Material Facts ¶ 9; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Plaintiff's job responsibilities, salary, benefits, hours, and working conditions did not change beyond reporting to a new supervisor.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 10-11, Ex. A at 107–08 [Dep. of Connie Reynolds]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)

c.      *The August 2003 Employee Incident*

On August 27, 2003, one of Defendant's employees became ill and fell to the floor in pain. (*Id.*, Statement of Undisputed Material Facts ¶ 21, Ex. D ¶ 2 [Aff. of Thongsamouth Khamsitthisack]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.) Thongsamough Khamsitthisack, the ill employee's supervisor, called Plaintiff and emergency response professionals about the incident. (*Id.*, Statement of Undisputed Material Facts ¶ 22, Ex. D ¶¶ 2, 3 [Aff. of Thongsamouth Khamsitthisack]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Plaintiff and emergency response professionals arrived on the scene and had some interaction, wherein Plaintiff told the emergency response professionals that they were improperly dressed and could not enter the room where the ill employee was located.   (*Id.*, Statement of Undisputed Material Facts ¶ 22, 24, 25; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 10.)  Khamsitthisack and Sally Pena, another employee of Defendant, both bore witness to Plaintiff's interaction with the emergency response professionals.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 24, 27, Ex. D ¶ 4 [Aff. of Thongsamouth Khamsitthisack], Ex. E ¶¶ 5, 6 [Aff. of Sally Pena]; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶¶ 1, 11.)  Khamsitthisack and Pena were of the opinion that Plaintiff's behavior was inappropriate, and both employees reported their opinions to their supervisor or manager.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 26, 27, Ex. D ¶ 8 [Aff. of Thongsamouth Khamsitthisack], Ex. E ¶ 8 [Aff. of Sally Pena]; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶¶ 11, 12.)  Khamsitthisack also received complaints from other employees who disapproved of how Plaintiff behaved in the incident.  (*Id.*, Statement

-6-

of Undisputed Material Facts ¶ 28, Ex. D ¶ 7 [Aff. of Thongsamouth Khamsitthisack]; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 13.)  Michael Piper was the fire captain who led the response to Khamsitthisack's emergency call.  (*Id.*, Statement of Undisputed Material Facts ¶ 29, Ex. F at 5 [Dep. of Michael Piper]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 14.)  Piper believed that Plaintiff's behavior was unprofessional and made his job more difficult.  (*Id.*, Statement of Undisputed Material Facts ¶ 31, Ex. F at 18–19 [Dep. of Michael Piper]; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶¶ 15, 16.)

Sharon Oliver received reports of employees' complaints regarding Plaintiff's behavior during the August 27, 2003 incident.  (*Id.*, Statement of Undisputed Material Facts ¶ 32, Ex. G at 104 [Dep. of Sharon Oliver]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Oliver commenced an investigation, in which she met with employees, Piper, and Plaintiff to discuss the incident.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 33–35; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Oliver then met with Byram to discuss the results of the investigation.  (*Id.*, Statement of Undisputed Material Facts ¶ 39; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Oliver and Byram drafted a final written warning to Plaintiff, directing Plaintiff to improve her credibility with employees and to be more compassionate toward employees.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 40, 43; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Defendant asserts that the warning was based on Plaintiff's response and behavior during the August 27, 2003 incident.  (*Id.*, Statement of Undisputed Material Facts ¶ 41, Ex. G at 18 [Dep. of Sharon Oliver]; *denied at* Pl.'s

Resp., Resp. to Undisputed Material Facts ¶ 18.)  Plaintiff asserts that Oliver and Byram issued

the final written warning as a pretext to terminate her employment.  (Pl.'s Resp., Resp. to

Undisputed Material Facts ¶ 18.)

> **d.     *Plaintiff's Final Written Warning and Termination***

On the morning of September 8, 2003, Oliver and Byram presented the final written

warning to Plaintiff.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 42, 44, Ex. A 173–74 [Dep.

of Connie Reynolds]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Upon

receiving the warning, Plaintiff did not acknowledge any inappropriate actions with respect to the

August 27, 2003 incident, and told Oliver and Byram that she would handle herself in the same

manner if the situation were to repeat.  (*Id.*, Statement of Undisputed Material Facts ¶ 44, 45, Ex.

A 174 [Dep. of Connie Reynolds]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶

1.)  Oliver and Byram gave Plaintiff the rest of the day off, and met with each other later the same

day.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 46, 47, Ex. A at 182 [Dep of Connie

Reynolds], Ex. G at 23–25 [Dep. of Sharon Oliver]; *admitted at* Pl.'s Resp., Resp. to Undisputed

Material Facts ¶ 1.)  Defendant asserts that Oliver and Byram decided to terminate Plaintiff's

employment at that meeting, which took place sometime late in the day on September 8, 2003.

(*Id.*, Statement of Undisputed Material Facts ¶¶ 48, 49, Ex. G at 22–25 [Dep. of Sharon Oliver];

*denied at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶¶ 20, 21.)  Defendant asserts that

Oliver and Byram decided to terminate Plaintiff's employment because Plaintiff refused to

acknowledge that her actions were  inappropriate, and stated she would behave the same way

again.  On the evening of September 8, 2003, Byram and Oliver prepared the necessary

paperwork in connection with Plaintiff's termination.  (*Id.*, Statement of Undisputed Material Facts ¶ 50, Ex. G at 28 [Dep. of Sharon Oliver]; *denied at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶¶ 20, 21.)  On the evening of September 8, 2003. Defendant's payroll manager, Laurie Sadler, came into Defendant's offices in order to prepare Plaintiff's final paychecks.  (*Id.*, Statement of Undisputed Material Facts ¶ 52, Ex. I at ¶¶ 1–4 [Aff. of Laurie Sadler]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  On September 8, 2003, Sadler faxed Defendant's bank a notice that she had prepared Plaintiff's final paychecks for issuance the following day.  (*Id.*, Statement of Undisputed Material Facts ¶ 53, Ex. I ¶ 3 [Aff. of Laurie Sadler]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Computer records confirm that Plaintiff's termination letter and proposed severance agreement were prepared and last revised on September 8, 2003.  (*Id.*, Statement of Undisputed Material Facts ¶ 51, Ex. H at ¶¶ 2–4 [Aff. of Keith Axelrod]; *admitted in relevant part at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 22.)  Plaintiff does not dispute the dates or preparations outlined above, but rather disputes their purpose.  Plaintiff asserts that the termination letter and proposed severance agreement were part of an effort to get Plaintiff to resign and waive her rights to sue Defendant. (Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 22.)

On the morning of September 9, 2003 Plaintiff came into work and handed Oliver a letter, in which she accused Defendant of discrimination and retaliation.[4]  (*Id.*, Statement of Undisputed

---

[4]The letter reflects a date of September 8, 2003.  (Pl.'s Resp., Ex. 14 [Letter From Connie Reynolds re: Response to Corrective Action].)  The parties do not dispute that Plaintiff presented the letter to Oliver and Byram on September 9, 2003.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 54; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)

Material Facts ¶ 54; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)
Specifically, Plaintiff stated in her letter that the accusations made in the final written warning
were "false and a pre-text [sic] . . . because of several incidences."  (Pl.'s Resp., Ex. 14 [Letter
from Connie Reynolds re: Response to Corrective Action].)  Plaintiff proposed a list of six
supportive incidences: (1) age discrimination; (2) Plaintiff's criticism of Byram in an employee
evaluation; (3) Plaintiff's voiced objections to Defendant's termination of former employee
Elizabeth McCarthy as discriminatory; (4) Plaintiff's voiced objections to Defendant's termination
of former employee Elizabeth McCarthy as discriminatory; (5) Plaintiff's voiced concerns that
Defendant was not offering blood pathogen training, as required by law; and (6) Plaintiff's giving
notice to Byram regarding "the probability of missing significant work for open-heart surgery."
(*Id.*)

      Shortly after Plaintiff presented Oliver and Byram with the letter, Oliver and Byram met
with Plaintiff and terminated her employment.  (Def.'s Br., Statement of Undisputed Material
Facts ¶ 55; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Plaintiff asserts that
the Oliver and Byram made the decision to terminate Plaintiff on September 9, 2003, after
Plaintiff presented them the letter expressing her belief that she was a victim of discrimination and
retaliation.  (Pl.'s Resp., Resp. to Undisputed Material Facts ¶¶ 20, 21.)

2.      *Procedural History*

On May 24, 2004, Plaintiff filed a complaint in this court.[5]   (Compl)  Plaintiff asserts four

claims for relief: (1) discrimination under the ADA; (2) gender discrimination and retaliation

under Title VII; (3) age discrimination and retaliation under the ADEA; and (4) breach of

contract/promissory estoppel.  (Compl. at 6–7.)  On July 2, 2004, Defendant filed an answer.

(Answer [filed July 2, 2004].)

On January 24, 2005, Defendant filed a motion for summary judgment.  (Def.'s Br.)

Defendant argues that Plaintiff cannot maintain her claims for disability, age, or sex discrimination

under the ADA, ADEA or Title VII because Plaintiff cannot establish the requisite *prima facie*

---

[5]I note that it is very difficult to parse Plaintiff's claims and discern exactly what Plaintiff is alleging in her lawsuit.  Plaintiff asserts at paragraph thirty of her unartfully drafted complaint that:

> [o]ne or more of the above actions were taken against plaintiff for one or more of the following reasons: plaintiff was female, over [forty] years old, disabled and/or perceived as being disabled, the company [sic] knew of impending surgery and need [sic] for time off work, she [sic] called attention to discriminatory actions against another [sic] employees, she [sic] used the open door policy to complain about discrimination and retaliation, and she [sic] complained about discrimination against herself, and she [sic] reported potential OSHA violations.

(Compl. ¶ 30.)  In contrast, Plaintiff alleges her four claims for relief in short form and deceptively simple language.  By way of example, Plaintiff's first claim for relief reads in total: "[b]y the aforesaid acts of discrimination, the defendant corporation has breached the [ADA]." (Compl. ¶ 42.)  The hundreds of facts in total alleged in this case do not help matters much, as the vast majority are either are conclusory statements or wholly irrelevant to the instant case.  By way of illustration: "Oliver's credibility is also suspect because she claimed that when she received the letter in which plaintiff complained about discrimination/retaliation . . . Oliver did not read it.  She claimed to have only 'glanced at it,' even though reading it would have taken all of [fifteen] seconds."  (Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶ 154) (citing Deposition of Sharon Oliver)

cases. (*Id.* at 15–30.) Defendant asserts that Plaintiff cannot maintain claims for retaliation under the ADEA and Title VII because Plaintiff cannot show the requisite causal connection between Plaintiff's protected acts and Defendant's alleged retaliation. (*Id.* at 18–30.) Finally, Defendant argues that Plaintiff cannot establish a claim for breach of contract because Plaintiff cannot demonstrate that Defendant owed Plaintiff a contractual duty. (*Id.* 30–33.) On March 9, 2005, Plaintiff filed a response to Defendant's motion for summary judgment. (Pl.'s Resp.) On April 7, 2005, Defendant filed a reply in support of its motion for summary judgment. (Reply in Support of Mot. for Summ. J. on All Claims for Relief [filed Apr. 7, 2005] [hereinafter "Def.'s Reply"].) This matter is fully briefed.

## ANALYSIS

### 1.    *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      *Evaluation of Claims***

        **a.      *Preliminary Matters***

Before turning to the substantive issues in this case, I address two preliminary matters relating to anti-discrimination claims — the adverse employment action requirement and the burden of proof.

                **i.      *Adverse Employment Action***

A fundamental requirement of an anti-discrimination action is an adverse employment action. *See Corneveaux v. CUNA Mut. Ins. Group*, 76 F.3d 1498, 1502 (10th Cir. 1996) (holding demonstration of adverse employment action is required to maintain a claim under the ADEA); *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003) (holding demonstration of adverse employment action is required to maintain a claim under Title VII); *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1228–29 (10th Cir. 2004) (holding demonstration of adverse employment

action is required to maintain a claim under the ADA).  In her submissions, Plaintiff alleges that

Defendant took three adverse employment actions against her: (1) reassigning Plaintiff to a new

supervisor; (2) issuing Plaintiff a final written warning on September 8, 2003; and (3) terminating

Plaintiff's employment on September 9, 2003.  (Compl. ¶¶ 25, 29; Def.'s Br., Statement of

Undisputed Material Facts ¶ 57; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)

It is significant that after Plaintiff's supervisor reassignment, Plaintiff's job obligations,

functions, salary and benefits remained the same.  (Def.'s Br., Statement of Undisputed Material

Facts ¶ 11, Ex. A. at 107–08 [Dep. of Connie Reynolds]; *admitted at* Pl.'s Resp., Resp. to

Undisputed Material Facts ¶ 1.)  "A mere inconvenience or an alteration of job responsibilities"

does not rise to the level of an adverse employment action.  *Sanchez v. Denver Public Schs.*, 164

F.3d 527, 532 (10th Cir. 1998).  Indeed, the only effect of the reassignment was that Plaintiff

reported to a new supervisor, Oliver.  (*Id.*)  Plaintiff's supervisor reassignment is not an adverse

employment action, thus I decline to address Plaintiff's claims as to her reassignment.

Generally, for an employment action to be considered adverse, Plaintiff must have

experienced a significant change in employment status, such as hiring, firing, failure to be

promoted, reassignment with significantly different responsibilities, or imposition of a significant

change in benefits.  *Annett v. University of Kansas*, 371 F.3d 1233, 1237 (10th Cir. 2004).  Thus,

Plaintiff's termination is clearly an appropriate subject of her claims.  Further, the Tenth Circuit

has held that "[d]isciplinary proceedings, such as warning letters and reprimands can constitute []

adverse employment action[s]."  *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir.

2005).  Accordingly, the final written warning issued to Plaintiff is also an appropriate subject of

her claims.  Consequently, the only adverse employment actions properly before the court in this case are Plaintiff's final written warning and termination.

### ii.  *McDonnell Douglas Burden-Shifting*

Plaintiff relies on indirect evidence to demonstrate employment discrimination in this case. Therefore I apply the three-step burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 800-07 (1973).  First, under the *McDonnell Douglas* framework, Plaintiff carries the burden of raising a genuine issue of material fact as to each element of her *prima facie* case.  *McCowan v. All Star Maint*., Inc., 273 F.3d 917, 922 (10th Cir. 2001).  The "burden of establishing a *prima facie* case" is "not onerous."  *Id.* (citation and internal quotation marks omitted).  Second, if Plaintiff establishes a *prima facie* case, the burden shifts to Defendant, to "articulate a legitimate, nondiscriminatory reason for the adverse employment action."  *Wells*, 325 F.3d at 1212 (citing *McDonnell Douglas*, 411 U.S. 792).  Third, if Defendant articulates such a legitimate, nondiscriminatory reason for its action, the burden shifts back to Plaintiff, and summary judgment is warranted unless Plaintiff can demonstrate a genuine issue of material fact as to whether Defendant's "asserted reasons for the adverse action are pretextual."  *Id.* (citation and internal quotation marks omitted); *Jones v. Denver Post Corp.*, 203 F.3d 748, 756 (10th Cir. 2000).

The *McDonnell Douglas* framework applies to Plaintiff's claims under the ADA, ADEA, and Title VII.  *See Garrett v. Hewlett Packard Co*., 305 F.3d 1210, 1216 (10th Cir. 2002) (applying *McDonnell Douglas* framework to ADEA and Title VII claims); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003) (applying *McDonnell Douglas* framework to ADA claims).  The *McDonnell Douglas* framework also applies to Plaintiff's retaliation claims.

*See Hill v. Steven Motors, Inc.*, 97 Fed. Appx. 267, 272 (10th Cir. 2004); *Wells*, 325 F.3d at

1212. I apply the *McDonnell Douglas* framework to each of Plaintiff's claims in turn.

>    **b.      Plaintiff's ADA Claim for Disability Discrimination**

Defendant argues that it is entitled to summary judgment on Plaintiff's first claim for relief

for discrimination under the ADA. (Def.'s Br. at 15–17.) Under the ADA, an employer may not

discriminate against a qualified disabled employee "'in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment'" because of the employee's disability. *Doebele*

*v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1128 (10th Cir. 2003) (citing 42 U.S.C. § 12112).

Plaintiff alleges that when Defendant issued her a final written warning, Defendant discriminated

against her because she is disabled. (Compl. ¶ 42.) Defendant argues that Plaintiff cannot

establish a *prima facie* case of discrimination, in that she cannot establish she has a disability as

defined by the ADA. (Def's Br. at 15–17.) As set forth above at *Analysis* § 2aii *supra*, the

burden-shifting analysis established by *McDonnell Douglas* generally applies to disparate

treatment claims arising under the ADA. *See Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076,

1079 (10th Cir. 1999). I analyze each step below.

>    **i.      Prima Facie Case**

To establish a *prima facie* case under the ADA, Plaintiff must show that: (1) she is

disabled within the meaning of the ADA; (2) she is qualified — meaning she is able to perform the

essential functions of the job, with or without reasonable accommodation, which she must

describe; and (3) Defendant took adverse employment action against her because of her disability.

*White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir. 1995). The parties do not dispute that

Plaintiff was able to perform the essential functions of her job.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 76, Ex. A at 265 [Dep. of Connie Reynolds]; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Thus, Plaintiff was qualified under ADA standards, and I need only address the first and third elements.

### *(1)     Disabled under ADA Standards*

Under ADA standards, a disability is "'(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"  *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 361 (2001) (citing 42 U.S.C. § 12102[2]).  Plaintiff asserts in her complaint that she was disabled, and her heart condition "limited one or more of [her] major life activities."  (Compl. ¶¶ 22, 23.)  Intriguingly, Plaintiff's deposition testimony suggests that her heart condition did not limit her major life activities.[6]  (Def.'s Br., Statement of Undisputed Material Facts ¶ 76, Ex. A at 265 [Dep. of Connie Reynolds]; *admitted at* Pl.'s Resp., Resp. to Undiputed Material Facts ¶ 1.)  Still more intriguingly, Plaintiff alleges in her complaint that Defendant regarded her "as having a disability, and medical records established same."  (Compl. ¶ 22, 24.)  I interpret the latter part of Plaintiff's statement to mean that medical records establish that Plaintiff had a disability.[7]  Because Plaintiff essentially argues that she meets all of the statutory definitions of disability, I address all three.

---

[6]When asked "[d]oes this heart condition, does it affect any of your major life activities?" Plaintiff responded "[n]o."  (Def.'s Br., Ex. A at 265 [Dep. of Connie Reynolds].)

[7]It is difficult indeed to grasp how medical records could establish Defendant's impression or regard.

*(a)        Physical or Mental Impairment Limiting Activity*

In order to establish a disability, Plaintiff may show that she has an impairment that "substantially limits" one or more of her major life activities.  42 U.S.C. § 12102(2).  This definition contains three elements: first, Plaintiff must have a recognized impairment; second, Plaintiff must identify one or more appropriate major life activities; and third, Plaintiff must show that the impairment substantially limits one or more of those activities.  *Doebele*, 342 F.3d at 1129.  First, Plaintiff's claims all arise out of her heart condition as her impairment.  (Pl.'s Resp., Statement of Additional Material Facts ¶ 101, Ex. 3 at 261–64 [Dep. of Connie Reynolds].)  Second, Plaintiff does not specify which major life activity is affected by her heart condition, but asserts the corrective surgery to repair the condition would result in an "extended leave" from work.  (Pl.'s Resp., Pl.'s Statement of Additional Undisputed Material Facts ¶ 106, Ex. 2 ¶ 48 [Decl. of Connie Reynolds].)

Courts have been hesitant to define working as a major life activity.  The Supreme Court has held that "even assuming working is a major life activity, a claimant would be required to show an inability to work in a 'broad range of jobs,' rather than a specific job."  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002) (citing *Sutton v. United Air Lines*, 527 U.S. 471, 492 [1999].)  Plaintiff does not allege that she would be unable to work in a broad range of jobs.  Plaintiff contends that the surgery — which might or might not be necessary — to repair her heart valve condition would cause Plaintiff to take an "extended leave" from her present position.  (Pl.'s Resp., Statement of Additional Material Facts ¶¶ 105, 106, Ex. 2 ¶ 48 [Decl. of Connie Reynolds], Ex. 3 at 264 [Dep. of Connie Reynolds].)  Even if Plaintiff could meet this second element, Plaintiff still could not establish a that she has a disability, because she cannot

-18-

meet the third element — that she was substantially limited in her major life activities by her impairment.

In order for a physical or mental impairment to be "substantially limiting," the individual must be:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

*Martin v. AT&T Corp.*, 331 F. Supp. 2d 1274, 1298 (D. Colo. 2004) (citations omitted).

"[S]ubstantially" must "be interpreted strictly."[8] *Toyota*, 534 U.S. at 197. "To be substantially limited . . . an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." *Id*. at 198; *Hill*, 97 Fed. Appx. at 276. Plaintiff's heart valve condition has been symptomatic since 1996, the same year Plaintiff became employed by Defendant. (Compl. ¶ 14; Def.'s Br., Statement of Undisputed Material Facts ¶ 2, Ex. A at 23–24, 260 [Dep. of Connie Reynolds]; Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶¶ 101, 102, 104, 105.) Further, the parties agree that Plaintiff was not limited in performing the essential components of her work. (Def.'s Br., Statement of Undisputed Material Facts ¶ 76, Ex. A at 265 [Dep. of Connie Reynolds]; *admitted at* Pl.'s Resp.,

---

[8]Whether Plaintiff has an impairment within the meaning of the ADA, and whether the Plaintiff's affected conduct is a major life activity under the ADA are questions of law for the court to decide. *Doebele*, 342 F.3d at 1129 (citations omitted). Whether an impairment is substantially limiting is ordinarily a question of fact for a jury, but may be evaluated by the court upon a motion for summary judgment. *Bristol v. Bd. of County Comm'rs*, 281 F.3d 1148, 1161 n.5 (10th Cir. 2002).

Resp. to Undisputed Material Facts ¶ 1.)  Thus, Plaintiff could not have been substantially limited in her major life function of work by her impairment, as she has performed her work for Defendant for years while under the effects of her impairment without hindrance.  Moreover, despite Plaintiff's allegations in her complain, Plaintiff testified that her heart condition did not limit her major life activities.  (Def.'s Br., Ex. 3 at 265 [Dep. of Connie Reynolds].)  Therefore, I conclude Plaintiff does not have a disability under the first definition.

### *(b)      Record of Impairment*

Plaintiff suggests in her complaint that she satisfies the second definition of disability under the ADA because medical records establish her disability.  (Compl. ¶ 24.)  Plaintiff furnishes no such records for the court's review, and refers to no records — medical or otherwise — beyond her own recollections of her doctor's purported statements regarding her heart condition.  (Pl.'s Resp., Ex. 3 at 261–64 [Dep. of Connie Reynolds].)  Plaintiff's own self-serving and often contradictory statements are insufficient to create a record of disability sufficient to overcome summary judgment.  *See Burns v. Snow*, 130 Fed. Appx. 973, 982 (10th Cir. 2005) (finding Plaintiff's own self-serving declarations of suffering from disability insufficient to create a record or defeat summary judgment).  Accordingly, Plaintiff has not met her burden to satisfy the second disability definition.

### *(c)      Regarded as Disabled*

Plaintiff also argues that she meets the third definition of disability under the ADA because Defendant regarded her as being disabled.  (Compl. ¶¶ 22, 24.)  In order to satisfy the third definition, Plaintiff must establish that Defendant perceived Plaintiff as disabled within the meaning of the Rehabilitation Act.  *McGeshick v. Principi*, 357 F.3d 1146, 1151 (10th Cir. 2004).

Plaintiff could satisfy this requirement in two ways, by establishing either: (1) Defendant mistakenly believes that Plaintiff has a physical impairment that substantially limits one or more major life activities, or (2) Defendant mistakenly believes that Plaintiff's actual, non-limiting impairment substantially limits one or more major life activities. *Sutton*, 527 U.S. at 489–90 (citing 42 U.S.C. 42 U.S.C. § 12101[7]).  In short, Plaintiff must establish that Defendant entertained misconceptions about Plaintiff's abilities, either as to whether Plaintiff has an impairment, or as to the limiting nature of an impairment Plaintiff has. *Id.*  Plaintiff does neither. Instead, Plaintiff rests on her baldly conclusory assertions that Defendant regarded her as disabled. (Pl.'s Resp.)

Moreover, Plaintiff, whose heart condition has allegedly been symptomatic since 1996, remained able to perform the essential functions of that job throughout her employment, and remained in the same position at her job after divulging to Defendant that she had a heart condition in 2002.  (Compl. ¶ 14; Def.'s Br., Statement of Undisputed Material Facts ¶¶ 2, 76, Ex. A at 23–24, 259-65 [Dep. of Connie Reynolds]; *deemed admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1, Statement of Additional Undisputed Material Facts ¶¶ 101–05.) Defendant's continuing willingness to employ Plaintiff in the same position after learning of her heart condition amounts to undisputed evidence that Defendant did not regard Plaintiff as substantially limited in her ability to work. *Rakity v. Dillon Cos.*, 302 F.3d 1152, 1164 (10th Cir. 2002).  Therefore, Plaintiff does not meet the third definition of a disability under the ADA.

### *(2)        Defendant took action because of disability*

Even if Plaintiff could have established that Defendant regarded her as disabled, she still could not establish a *prima facie* case, because Plaintiff utterly fails to demonstrate that Defendant

took adverse employment action against her because of her alleged perceived disability. To
establish a causal connection, Plaintiff must provide evidence that her disability was a determining
factor in Defendant's decision to terminate her employment. *Bones v. Honeywell Int'l, Inc.*, 366
F.3d 869, 878–79 (10th Cir. 2004). Plaintiff put Defendant on notice of her heart condition
sometime in 2002, which would create, at the shortest, a nine-month lag between Plaintiff's
divulgence of her disability and Defendant's adverse action in terminating her employment. This
lapse of time — at least nine months and up to twenty-one months — is too great to establish a
causal connection. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)
(holding a three-month time lapse is too attenuated to support an inference of a causal
connection); *Bones*, 366 F.3d at 878–79 (holding ten months is too long a time lapse to support
an inference of a causal connection between plaintiff's alleged disability and her termination).

Plaintiff cannot establish that she has a disability as defined by the ADA. Even assuming
she could, Plaintiff cannot establish the requisite causal connection between her alleged disability
and termination of her employment. Thus, Plaintiff has neither presented a triable issue of fact nor
carried her burden to establish a *prima facie* case. Accordingly, I need not address the
subsequent prongs required under *McDonnell Douglas*. Defendant is entitled to summary
judgment on Plaintiff's claim for discrimination under the ADA.

### c.      *Plaintiff's Title VII Claims for Sex Discrimination and Retaliation*

Defendant argues that it is entitled to summary judgment on Plaintiff's second claim for
relief for Title VII discrimination and retaliation. (Def.'s Br. at 20–30.) Plaintiff alleges that
Defendant discriminated and retaliated against her in violation of Title VII when Defendant issued

its final warning and terminated Plaintiff's employment.[9]  (Compl. ¶ 43.)  Defendant counters that

Plaintiff cannot maintain either claim because she: (1) cannot establish a *prima facie* case for sex

discrimination, or if she can, Plaintiff cannot debunk Defendant's legitimate nondiscriminatory

reasons for its actions; and (2) cannot establish a *prima facie* case for retaliation.  (Def.'s Br. at

20–30.)  As set forth in *Analysis* § 2aii *supra*, the *McDonnell Douglas* burden-shifting framework

applies to Plaintiff's discrimination and retaliation claims.  *Burns v. Bd. of County Comm'rs of*

*Jackson County*, 330 F.3d 1275, 1283 (10th Cir. 2003); *Tomsic v. State Farm Mut. Auto. Ins.*

*Co.*, 85 F.3d 1472, 1476–77 (10th Cir. 1996).  I address each step in turn with respect to each

claim.

### i.      Title VII Discrimination

Under Title VII, it is an "unlawful employment practice for an employer . . . to

discriminate against any individual . . . because of such individual's race, color, religion, sex, or

national origin."  *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92–93 (2003) (citing 42 U.S.C. §

2000e-2[a][1]).  Plaintiff argues that Defendant discriminated against her because of her sex and

violated Title VII when it issued her a final written warning.  (Compl. ¶ 43.)  Defendant counters

that Plaintiff cannot establish a *prima facie* case for sex discrimination, and cannot debunk

Defendant's legitimate nondiscriminatory reasons for its actions.  (Def.'s Br. at 20–30.)

### (1)     Prima Facie Case

In order to establish a *prima facie* case for sex discrimination, Plaintiff must demonstrate

that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3)

---

[9]For reasons outlined above at *Analysis* § 2ai *supra*, I do not address Plaintiff's claim that she suffered an adverse employment action in her reassignment to a new supervisor with respect to Plaintiff's Title VII claim.

Case 1:04-cv-01056-EWN-MEH   Document 36   Filed 12/16/05   USDC Colorado   Page 24 of 43


she was qualified for the position at issue; and (4) she was treated less favorably than others not in

the protected class. *Sanchez*, 164 F.3d at 531.  Plaintiff arguably satisfies the first three prongs in

asserting that: (1) she is a female; (2) she was issued a final written warning; and (3) Plaintiff

performed her job well, as supported by several positive performance evaluations.  (Compl. ¶¶ 13,

16, 30; Pl.'s Resp., Ex 7 [6/12/01 Performance Feedback], Ex. 8 [3/12/01 Performance Review],

Ex. 9 [3/30/00  Performance Review], Ex. 10 [4/99 Performance Review], Ex. 11 [4/1/98

Performance Review].)

 Regarding the fourth prong, Plaintiff alleges that Defendant fired older females with health

problems, but "did not fire males."  (Pl.'s Resp., Statement of Additional Undisputed Material

Facts ¶ 108, Ex. 3 at 277 [Dep. of Connie Reynolds].)  Plaintiff also alleges that her primary

comparator — Keith Axelrod, a healthy male employee under the age of forty in her same

department — "was never disciplined by Oliver or Byram" for his insensitivity toward employees.

(Pl.'s Resp. at 34.)  Plaintiff's arguments, supported only by her own deposition testimony, are

unavailing.  Axelrod's disciplinary stature and Defendant's hiring and firing practices are beyond

the purview of Plaintiff's personal knowledge.  As such, Plaintiff's allegations are uncorroborated

and conclusory.  Conclusory allegations, without more, are not sufficient to prevail on summary

judgment.  *See Salgueo v. City of Clovis*, 366 F.3d 1168, 1178 (10th Cir. 2004).  Plaintiff has not

met her burden to establish a *prima facie* case for Title VII sex discrimination, therefore I need

not analyze the subsequent steps of the *McDonnell Douglas* framework.[10]  Defendant is entitled

to summary judgment on Plaintiff's Title VII sex discrimination claim.

  **ii.**  **Retaliation**

    Under Title VII, it is unlawful "'for an employer to discriminate against any of [its]

employees . . . because [the employee] has opposed any practice made an unlawful employment

practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Clark*

*County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001) (quoting 42 U.S.C. § 2000e-3[a]).

---

[10] Even assuming Plaintiff could establish a *prima facie* case, Defendant satisfies its burden by providing a nondiscriminatory, legitimate reason for issuing her the final written warning. Defendant's burden is merely to "merely to articulate through some proof a facially nondiscriminatory reason for the termination" *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992).  The reason need not be *bona fide*, but must be "reasonably specific and clear." *Id.*  Defendant gives a reasonably specific and clear reason for issuing Plaintiff's final written warning in Plaintiff's behavior regarding the employee who fell ill on August 27, 2003.  (Def.'s Br. at 20.)
  Plaintiff cannot defeat Defendant's reason as pretextual.  *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998).  The relevant inquiry is whether Defendant had a good faith or honest belief that its legitimate, nondiscriminatory reasons for issuing its final warning to Plaintiff were proper.  *McKnight*, 149 F.3d at 1129; *Saladin v. Packerware Corp.*, 43 Fed. Appx. 268, 270 (10th Cir. 2002).  Defendant's good faith reason is supported by its investigation into the incident and by sworn statements of other employees and of a responding emergency response professional expressing disapproval of Plaintiff's behavior.  (Def.'s Br., Ex. D ¶ 8 [Aff. of Thongsamouth Khamsitthisack], Ex. E ¶ 8 [Aff. of Sally Pena], Ex. F at 17–19 [Dep. of Michael Piper].)  To establish pretext, Plaintiff cites to fellow employee Jerri Paulison's sworn statement, in which Paulison praises Plaintiff's compassion, but makes no reference to the August 27, 2003 incident.  (Pl.'s Resp., Ex. 4, *passim* [Decl. of Jerri Paulison].)  Paulison was not Plaintiff's supervisor and was not privy to the August 27, 2003 incident.  (Def.'s Reply, Resp. to Additional Undisputed Material Facts ¶¶ 18–25.)  Plaintiff also cites to performance reviews from 1998 through 2001 — several months before the September 2001 MSEC investigation and a full two years before the August 27, 2003 incident and subsequent final written warning.  (Pl.'s Resp., Ex 7 [6/12/01 Performance Feedback], Ex. 8 [3/12/01 Performance Review], Ex. 9 [3/30/00 Performance Review], Ex. 10 [4/99 Performance Review], Ex. 11 [4/1/98 Performance Review].)  Plaintiff's arguments and support are unpersuasive to defeat Defendant's good faith belief and ultimately insufficient to raise a genuine issue of fact as to pretext.

Plaintiff alleges that Defendant violated Title VII when it terminated her employment in retaliation against her for participating in protected opposition by bringing up her concerns about discrimination against other employees and against herself.  (Compl. ¶¶ 17, 20, 28, 43.) Defendant alleges that it is entitled to summary judgment because Plaintiff cannot show the requisite causal connection between Plaintiff's protected opposition and Defendant's alleged retaliation.  (Def.'s Br. at 18–30.)  The *McDonnell Douglas* framework applies to Plaintiff's retaliation claim.  *Wells*, 325 F.3d at 1212.  I address each stage in turn.

### (1)    *Prima Facie Case*

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she participated in protected opposition to Title VII discrimination; (2) Defendant's adverse employment action against Plaintiff was subsequent to or contemporaneous with Plaintiff's protected opposition; and (3) a causal connection exists between Plaintiff's protected opposition and Defendant's adverse action.  *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996).

### (a)    *Protected Opposition*

Plaintiff indirectly asserts that she has performed three acts of protected opposition to discriminatory practices under Title VII: (1) her Spring 2002 complaints about McCarthy; (2) her September 9, 2003 letter to Defendant outlining discrimination; and (3) her various statements to Oliver and Byram about Defendant's discriminatory practices.  (Compl. ¶¶ 17, 27–30; Statement of Additional Undisputed Material Facts ¶¶ 50–53.)  Plaintiff's Spring 2002 complaints related to discrimination against McCarthy for terminating McCarthy while on maternity leave.  (Compl. ¶ 17.)  Informal complaints to supervisors can constitute protected opposition under Title VII, but

the adverse activity must closely follow the protected opposition.  *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253, 1255 (10th Cir. 2001).  Thus, Plaintiff's comments about McCarthy would be appropriate fodder for Title VII retaliation claim because of the sex-specific nature of pregnancy and maternity leave.  The same is true regarding Plaintiff's statements to her supervisors that Defendant engaged in sexually discriminatory practices — namely, a "pattern of discrimination against employees [over forty years of age] with health problems, particularly females."  (Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶ 30, Ex. 2 ¶¶ 4, 7 [Decl. of Connie Reynolds].)

With respect to Plaintiff's September 9, 2003 letter, even assuming that Plaintiff's letter could be construed as protected opposition to Title VII discrimination, the letter does not mention sex discrimination.  (Pl.'s Resp., Ex. 14 [Letter from Connie Reynolds re: Response to Corrective Action].)  It is therefore illogical that Defendant would terminate Plaintiff's employment for complaints of sex discrimination when Plaintiff made no such complaints.  Plaintiff's September 9, 2003 letter makes no mention whatsoever of sex discrimination or gender issues of any kind, and is thus not a proper subject of a Title VII retaliation claim.

### *(b)      Contemporaneous with Adverse Action*

Defendant terminated Plaintiff's employment on September 9, 2003.  (Compl. ¶ 27; Def.'s Br., Statement of Undisputed Material Facts ¶ 55; *admitted at* Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 1.)  Plaintiff's concerns about McCarthy's termination, raised in 2002 are clearly not contemporaneous with Plaintiff's termination more than one year later.  Plaintiff's comments about discriminatory practices are worthy of more analysis.  Plaintiff alleges that she complained "repeatedly" that Defendant was culpable of a "pattern of discrimination against employees [over

forty years of age] with health problems, particularly females." (Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶ 30.) Plaintiff alleges that she complained of Defendant's discrimination to Byram sometime prior to her supervisor reassignment in April 2003. (Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶ 42, Ex. 3 at 316 [Dep. of Connie Reynolds].) More relevant to the instant case, Plaintiff alleges that she voiced her complaint about discrimination to Oliver approximately one month before Plaintiff's employment was terminated. (*Id.*, Statement of Additional Undisputed Material Facts ¶ 31, Ex. 2 ¶ 6 [Decl. of Connie Reynolds].) Plaintiff's complaints to Oliver one month prior to Plaintiff's termination are sufficiently contemporaneous to continue to the third prong.

### (c)  *Causal Connection*

A causal connection may be demonstrated in Title VII cases "by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). Unless the adverse action is "very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation." *Meiners*, 359 F.3d at 1231 (citing *Anderson*, 181 F.3d at 1179). More specifically, the Tenth Circuit has found that a "six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient." *Id.* Thus, proximity in time supports Plaintiff's statements to Oliver one month before her termination. Accordingly, Plaintiff has stated a *prima facie* case for retaliation under Title VII. I therefore progress to the subsequent *McDonnell Douglas* stages.

### *(2)     Legitimate Nondiscriminatory Reason*

Because Plaintiff has established a *prima facie* case, Defendant must carry the burden to

provide a legitimate nondiscriminatory reason for Plaintiff's termination.  *Bullington v. United Air*

*Lines, Inc.*, 186 F.3d 1301, 1317 (10th Cir. 1999).  Defendant's burden is:

> merely to articulate through some proof a facially nondiscriminatory
> reason for the termination; the defendant does not at this stage of
> the proceedings need to litigate the merits of the reasoning, nor
> does it need to prove that the reason relied upon was *bona fide*, nor
> does it need to prove that the reasoning was applied in a
> nondiscriminatory fashion.  However, the proffered reason for the
> action taken against the minority employee must be reasonably
> specific and clear.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (citations and footnote

omitted).  Here, Defendant's good faith, non-discriminatory reason to terminate Plaintiff is her

behavior during the August 27, 2003 incident.  (Def.'s Br. at 20.)  Defendant bolsters this reason

with the affidavits of fellow employees and of the emergency professional who led the response to

the incident.  (Def.'s Br., Ex. D [Aff. of Thongsamouth Khamsitthisack], Ex. E [Aff. of Sally

Pena], Ex. F [Dep. of Michael Piper].)  Defendant has thus presented a reasonably specific and

clear reason and has met its burden.

### *(3)     Pretext*

Plaintiff bears the burden of establishing that Defendant's proffered reason was not the

true reason underlying its action, and that Defendant's actions were motivated by retaliatory

reasons.  *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).  Plaintiff's

burden may be met either by direct evidence of Defendant's retaliatory motive or by evidence that

the proffered reason is pretextual.  *Id.*  Plaintiff may demonstrate pretext by showing "such

-29-

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Bullington*, 186 F.3d at 1317.

Plaintiff's case for pretext is strongly supported by the close temporal proximity between Plaintiff's protected opposition and Plaintiff's termination.  Although not a per se rule, protected conduct closely followed by an adverse employment action can preclude summary judgment despite the employer's articulation of a legitimate reason for its actions.  *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996); *Conner*, 121 F.3d at 1397–98; *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 551 (10th Cir. 1999).  Defendant alleges that it arrived at the decision to terminate Plaintiff's employment on the evening of September 8, 2003, and offers affidavits and circumstantial evidence in support.  (Def.'s Br. ¶¶ 49–53, Ex. G at 25 [Dep. of Carolyn Byram], Ex. H at Exs. 1, 2 [Aff. of Keith Axelrod], Ex. I ¶¶ 2–4, Exs. 1, 2 [Aff. of Laurie Sadler].)  Plaintiff contests Defendant's allegations.  Plaintiff alleges that: (1) the paperwork and preparations made on the evening of September 8, 2003 were all part of an effort to convince Plaintiff to resign; and (2) Defendant decided to terminate Plaintiff after receiving her letter on the morning of September 9, 2003.  (Pl.'s Resp., Resp. to Undisputed Material Facts ¶ 22, Statement of Additional Undisputed Material Facts ¶¶ 142–45, Ex. 24 [Carolyn Byram notes].)  Importantly, the parties do not dispute that Defendant actually terminated Plaintiff on September 9, 2003, shortly after Plaintiff presented her letter.  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 54, 55; *admitted at* Pl.'s Br., Resp. to Statement of Undisputed Material Facts ¶ 1.)  Construing the facts in a light most favorable to Plaintiff, the temporal proximity between the Plaintiff's tender of the letter and Plaintiff's termination is sufficiently close to create a basis for a trier of

fact to doubt the persuasiveness of Defendant's proffered reason and to find Defendant's reason pretextual.  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 180 (2d Cir. 2005) (a strong temporal connection between protected activity and adverse employment action is a sufficient basis to establish an issue of fact as to pretext).  Accordingly, Plaintiff has satisfied her burden at this stage, and Defendant is not entitled to summary judgment with respect to Plaintiff's claim for retaliation under Title VII.

> ### d.  *Plaintiff's ADEA Claims for Age Discrimination and Retaliation*

Defendant alleges that it is entitled to summary judgment on Plaintiff's claims for discrimination and retaliation under the ADEA.  (Def.'s Br. at 20–30.)  Plaintiff alleges that Defendant discriminated and retaliated against her in violation of ADEA when it issued her a final written warning and terminated her employment.  (Compl. ¶ 27, 30, 44.)  Defendant argues that Plaintiff cannot maintain either claim because she cannot establish a *prima facie* claim for either. (Def.'s Br. at 20–30.)  As set forth above at *Analysis* § 2aii *supra*, the *McDonnell Douglas* framework applies to Plaintiff's discrimination and retaliation claims under the ADEA.  *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998).  I address each stage in turn with respect to each claim.

> ### i.  *ADEA Age Discrimination*

The ADEA provides that it is unlawful for an employer to take adverse employment action against an employee based on the employee's age.  *See McKnight*, 149 F.3d at 1128; 29 U.S.C. § 623(a)(1).  Plaintiff argues that Defendant violated the ADEA and discriminated against her

because of her age when it issued her a final written warning.[11]  (Compl. ¶¶ 27, 44.)  Defendant

contends that Plaintiff's claim must fail because Plaintiff cannot demonstrate the requisite

causation, and thus cannot establish a *prima facie* case.  (Def.'s Br. at 20–30.)

### *(1)     Plaintiff's Prima Facie Case*

In order to establish a *prima facie* case of age discrimination, Plaintiff must show that: (1)

she was a member of a protected age group; (2) she performed satisfactory work; (3) she suffered

an adverse employment action despite performing satisfactory work; and (4) a younger person

replaced her.  *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 558 (10th Cir. 1996); *see also*

*McKnight*, 149 F.3d at 1128.  Plaintiff must also show causation.  "[P]laintiff's age must have

'actually played a role in [the employer's decisionmaking] process and had a determinative

influence on the outcome.'"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141

(2000) (alteration in original) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 [1993]).

Plaintiff arguably satisfies the first three prongs by stating that: (1) she is over forty years old; (2)

Plaintiff performed her job well, as supported by several positive performance evaluations from

previous years; and (3) she was issued a final written warning.[12]  (Compl. ¶¶ 13, 16, 30; Pl.'s

Resp., Ex. 7 [6/12/01 Performance Feedback], Ex. 8 [3/12/01 Performance Review], Ex. 9

[3/30/00  Performance Review], Ex. 10 [4/99 Performance Review], Ex. 11 [4/1/98 Performance

Review].)

---

[11]For the reasons set forth in *Analysis* § 2ai *supra*, I do not discuss Plaintiff's supervisor reassignment with respect to Plaintiff's ADEA discrimination claim.  (Compl. ¶ 44.)

[12]For reasons outlined above at *Analysis* § 2ai *supra*, I do not address Plaintiff's claim that she suffered an adverse employment action in her reassignment to a new supervisor.

Plaintiff cannot satisfy the fourth prong and thus cannot establish a *prima facie* case because Plaintiff was not replaced by a younger person in her employment position. (Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶¶ 161, 164, Ex. 28 at 27 [Dep. of Carolyn Byram].) In fact, Plaintiff's position was eliminated, and Plaintiff was not replaced. (*Id.*) Moreover, Plaintiff cannot establish the requisite causation.[13] Plaintiff fails to establish that her age played any role in Defendant's decision to issue the final written warning. *Reeves*, 530 U.S. at 141. Here, Plaintiff's allegations in support of her age discrimination claim are: (1) Byram had a tendency to get along with younger people; (2) at a meeting when people were discussing birthdays, Byram stated that Plaintiff was the oldest person present; (3) Oliver inquired about Plaintiff's age in discussions about Plaintiff's medical issues; (4) Axelrod commented that Plaintiff was the oldest person in her department "fairly frequently;" and (5) Plaintiff experienced age-related "innuendos" [sic]. (Pl.'s Br., Statement of Additional Undisputed Material Facts ¶¶ 94–99, Ex. 3 at 66–68, 198, 209–12 [Dep. of Connie Reynolds].) Plaintiff testified that Byram made the comment about Plaintiff being the oldest person present in February or March of 2003. (Pl.'s Br., Ex. 3 at 66–68 [Dep. of Connie Reynolds].) Byram's February or March 2003 comment, made six months before the written warning, is too remote in time to establish causation. *Anderson*, 181 F.3d at 1179 (holding a three-month time lapse is too attenuated to support an inference of a causal connection). Plaintiff offers no dates or specifications to support her other allegations. By way of illustration, Plaintiff testified that she could not remember when

---

[13]Even if Plaintiff could establish causation, her ADEA discrimination claim would still fail under the second and third prongs of the *McDonnell Douglas* framework for the same reasons Plaintiff's Title VII discrimination claim would fail. As described in *Analysis* § 2ci(1) n.6 *supra*, Defendant's reason behind the final written warning — that Plaintiff behaved poorly during the August 27, 2003 incident — was nondiscriminatory and was not pretextual.

the other comments were made and could not remember any specific statements Oliver made. (Pl.'s Resp., Ex. 3 at 204, 209–12 [Dep. of Connie Reynolds].)  These vague allegations are not sufficient to create a genuine issue of fact.  *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177 (10th Cir. 2000) ("A plaintiff cannot create a triable issue of fact by making an assertion without supporting facts.")  Thus, Defendant is entitled to summary judgment on Plaintiff's ADEA discrimination claim.

### ii.      *ADEA Retaliation*

The ADEA provides that it is unlawful for an employer to retaliate against an employee for engaging in statutorily protected opposition to age discrimination by an employer.  *See MacKenzie v. Denver*, 414 F.3d 1266, 1278-1279 (10th Cir. 2005); 29 U.S.C. § 623(d).  Plaintiff alleges that when Defendant terminated her employment, Defendant retaliated against her for participating in protected opposition by bringing up her concerns about discrimination against other employees and against herself.  (Compl. ¶¶ 17, 20, 28, 43.)  Defendant alleges that it is entitled to summary judgment because Plaintiff cannot show the requisite causal connection between Plaintiff's protected opposition and Defendant's alleged retaliation.  (Def.'s Br. at 18–30.)  The *McDonnell Douglas* burden-shifting framework applies to Plaintiff's ADEA retaliation claim.  *MacKenzie*, 414 F.3d at 1278–79; *Wells*, 325 F.3d at 1212.  I address each stage in turn.

### (1)      *Prima Facie Case*

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) she availed herself of a protected right under the ADEA; (2) she suffered an adverse employment action; and (3) there is a causal connection between her protected opposition and the adverse

employment action. *MacKenzie*, 414 F.3d at 1278–79. Plaintiff's September 9, 2003 termination suffices as an adverse employment action, thus I need only address the first and third prongs. *See Annett*, 371 F.3d at 1237.

### (a)     *Protected Opposition*

In order to establish a claim for retaliation, Plaintiff must demonstrate that she engaged in activity statutorily protected under the ADEA, such as opposing or complaining about age discrimination by the employer. *MacKenzie*, 414 F.3d at 1278–79. Plaintiff indirectly argues that she made three protected oppositions in the form of: (1) her February 2003 expression of concerns over Defendant's termination of Rose Pass; (2) her repeated statements to her supervisors that Defendant had a pattern of age discrimination; and (3) her September 9, 2003 letter, in which she referred to Defendant's alleged age discrimination against Plaintiff. (Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶¶ 37–39, 50–53, Ex. 14 [Letter from Connie Reynolds re: Response to Corrective Action].)

In February 2003, Plaintiff expressed her concern that Defendant's decision to terminate Rose Pass's employment discriminated against Pass on the basis of Pass's age and medical condition.[14] (Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶ 50–53.) Plaintiff's concern about Pass related to Defendant's alleged age discrimination, and is thus properly the

---

[14]Plaintiff argues that on April 29, 2003, shortly after Plaintiff raised concerns about Pass, Byram gave Plaintiff a negative performance evaluation. (Pl.'s Resp., Statement of Additional Undisputed Material Facts ¶ 54.) Plaintiff does not allege that Byram's performance evaluation was an adverse employment action, but even if Plaintiff had made such an allegation, Plaintiff's employment status did not change because of the evaluation. A performance evaluation that does not result in a significant change in employment status is not an adverse employment action. *Romero v. Denver Dep't of Soc. Servs.*, 57 Fed. Appx. 835, 841 (10th Cir. 2003). Accordingly, Plaintiff's discrimination and retaliation claims based on the evaluation are proper.

subject of Plaintiff's ADEA retaliation claim.  Plaintiff's statements to her supervisors regarding

Defendant's discriminatory actions — specifically that Defendant discriminated "against

employees over [forty years of age] with health problems" — also related to age discrimination

issues and are proper bases for Plaintiff's ADEA retaliation claim.  (Pl.'s Resp., Statement of

Additional Undisputed Material Facts ¶¶ 30, 32, Ex. 2 ¶¶ 4, 7 [Decl. of Connie Reynolds].)

Plaintiff's September 9, 2003 letter expressly states that she is the subject of Defendant's age

discrimination and is thus a proper subject of her retaliation claim.  (Pl.'s Resp., Ex. 14 [Letter

from Connie Reynolds re: Response to Corrective Action].)

### (b)    *Causal Connection*

Plaintiff may establish a causal connection in her ADEA retaliation claim by presenting

"evidence of circumstances that justify an inference of retaliatory motive, such as protected

conduct closely followed by adverse action."  *MacKenzie*, 414 F.3d at 1279 (citations and internal

quotations omitted).  More specifically, the Tenth Circuit has found that a "six-week period

between protected activity and adverse action may be sufficient, standing alone, to show

causation, but a three-month period, standing alone, is insufficient." *Meiners*, 359 F.3d at 1231.

Plaintiff's February 2003 divulgence of her concerns regarding Defendant's discrimination

against Pass took place approximately six months before Plaintiff's termination. (Pl.'s Resp.,

Statement of Additional Undisputed Material Facts ¶¶ 50–53.)  Thus, the time lag is too great to

establish causation.  Plaintiff's discussion with her superiors regarding Defendant's age

discrimination took place one month before Plaintiff's termination and thus is sufficiently close in

time to support causation.  (Pl.'s Resp., Ex. 2 ¶ 6 [Decl. of Connie Reynolds].)  Finally, Plaintiff's

letter shares the same date as her termination, and is clearly sufficiently close in time to support

causation.  (Pl.'s Resp., Ex. 14 [Letter from Connie Reynolds re: Response to Corrective Action].)  Accordingly, Plaintiff has satisfied a *prima facie* case for retaliation under the ADEA with respect to her comments and her letter.

### (2)      *Legitimate Nondiscriminatory Reason and Pretext*

For the same reasons outlined above at *Analysis §§ 2cii(2)–(3)*, the close temporal proximity between Plaintiff's protected oppositions and Defendant's adverse employment action will suffice to establish pretext sufficient to overcome Defendant's nondiscriminatory reasons. *Ssee Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 752 (10th Cir. 1999) (finding close temporal proximity is a factor in showing pretext for retaliation violative of the ADA). Accordingly, Defendant is not entitled to summary judgment as to Plaintiff's claim for retaliation under the ADEA.

### e.      *Breach of Contract and Promissory Estoppel*

Defendant argues that it is entitled to summary judgment on Plaintiff's fourth claim for breach of contract and promissory estoppel.  (Def.'s Br. at 30–33.)  Plaintiff alleges that Defendant maintained an open-door policy, whereby its employees could freely present complaints and concerns.  (Compl. ¶ 33.)  Plaintiff essentially argues that Defendant's open-door policy imposed a contractual duty upon Defendant, which Defendant breached when it terminated her employment for: (1) criticizing her supervisor Byram in an employee evaluation; (2) objecting to former employee Elizabeth McCarthy's termination as discriminatory; (3) objecting to former employee Partricia Bardo-Hankie's termination as discriminatory; (4) reporting concerns regarding employee training required by law; (5) reporting the likelihood of missing work due to open-heart surgery; and (6) announcing these issues to Defendant in a letter dated September 9,

2003.  (*Id.* ¶¶ 29, 45; Pl.'s Resp., Ex. 14 [Letter from Connie Reynolds Re: Response to

Corrective Action — Final Written Notice].)  Plaintiff argues further that Defendant "should be

estopped from denying the obligations embodied in said promises to [P]laintiff."  (*Id.*)

Defendant argues that Plaintiff's breach of contract and estoppel claims fail because

Plaintiff cannot establish that Defendant owed Plaintiff a contractual duty.  (Def.'s Br. at 30–33.)

Plaintiff asserts in her complaint that Defendant's contractual duties under the open-door policies

are established because Defendant "published the aforesaid [open-door] policies and in doing so

made an offer to the employees."  (Compl. ¶ 34.)  Additionally, Plaintiff asserts in her response to

Defendant's motion that the contractual duties are based on statements from employees in

Defendant's human resources department.  (Pl.'s Resp., Statement of Additional Undisputed

Material Facts ¶ 110.)  Accordingly, I address both the written policy and alleged verbal

statements.

### i.    *Defendant's Published Policy*

Plaintiff argues that Defendant's "published" open-door policy subjects Defendant to

contractual liability, but Plaintiff fails to state where the policy is published or what the policy

says.  (Compl. ¶ 34.)  Plaintiff's practice makes the court's task of determining the nature of this

alleged offer extremely difficult.  Without any indication whatsoever of what comprised the

"published" offer that ultimately arose to Defendant's alleged contractual duty of maintaining an

open-door policy, I cannot determine the existence or contours of any such duty.  Without proof

of the existence or scope of the alleged duty owed by Defendant, it follows logically I cannot find

that Defendant breached said duty and Plaintiff's claim must fail.

Interestingly, it is Defendant that fulfills Plaintiff's obligation and proffers a published open-door policy by pointing to its employee Guidelines for Managing our Human Resources (the "Guidelines"). (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 124, 125; Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 26, 27.) Given Plaintiff's assertions, it is surprising that, although Plaintiff concedes the open-door policy is published in the Guidelines, she also states: (1) she never read the Guidelines; and (2) her claims are not based on the Guidelines. (Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 26, 27, Statement of Additional Undisputed Material Facts ¶ 109.) Plaintiff's response is deadly to her claim. *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1465 (10th Cir. 1994) (concluding that a defendant's employee manual failed to support an implied contract claim because plaintiff testified he "'personally [] never paid much attention to the [manual]'").

Even if Plaintiff were to rely on the policy published in Defendant's Guidelines, Plaintiff's claim would still fail. In Colorado, an employee who is hired for an indefinite period of time is presumed to be an at-will employee whose employment may be terminated without cause or notice. *Continental Airlines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). Implied employment contracts creating an employment relationship other than at-will employment are recognized only in limited situations. *Id.* Importantly, the parties do not dispute that Plaintiff was an at-will employee. (Def.'s Br., Statement of Undisputed Material Facts ¶ 122, *admitted at*, Pl.'s Resp. Resp. to Statement of Undisputed Material Facts ¶ 25.) In order to succeed under an implied contract theory, statements in an employee manual must be a manifestation of the employer's willingness to enter into a bargain that would justify the employee in understanding

-39-

that his or her assent was invited.  *Continental Airlines*, 731 P.2d at 711.  The employee bears the

burden of establishing the existence of an implied contract.  *Continental Airlines*, 731 P.2d at 712.

Here, Plaintiff has furnished no evidence to establish the existence of an implied contract.

Moreover, the evidence Defendant furnishes is damning.  Where an employer has clearly and

conspicuously disclaimed intent to enter a contract limiting its right to discharge employees,

summary judgment dismissing breach of contract claims based on employee handbook provisions

is appropriate.  *Ferrera v. Nielsen*, 799 P.2d 458, 461 (Colo. App. 1990); *see also Redies v.

Nationwide Mutual Insurance Co.*, 711 F. Supp. 570, 573 (D. Colo. 1989).  Defendant's

Guidelines display a disclaimer in capital letters on the second stating:

> "OUR POLICIES AND GUIDELINES HAVE NEVER BEEN INTENDED TO
> SUGGEST OR IMPLY THAT THEY FORM THE BASIS FOR A
> CONTRACTUAL RELATIONSHIP BETWEEN EMPLOYEES AND THE
> COMPANY.  THEY . . . DO NOT ESTABLISH ANY CONTRACTUAL
> RIGHTS"

(Def.'s Br., Statement of Undisputed Material Facts ¶ 125, Ex. A at Ex. 16 [Dep. of Connie

Reynolds].)  A similar disclaimer is printed at the bottom of every subsequent page of the

Guidelines, albeit in less conspicuous type.  (*Id.*)  The Guidelines "contain[] a clear and

conspicuous disclaimer abrogating an intent to create . . . an employment agreement."  *Healion v.

Great-West Life Assur. Co.*, 830 F. Supp 1372, 1375 (D. Colo. 1993).  Accordingly, Plaintiff's

breach of contract claim based on a published open-door policy must fail.

Plaintiff's estoppel claim based on the written policy fails for similar reasons.  In Colorado,

if a discharged employee fails to show the existence of an implied contract, the employee may still

enforce a policy contained in an employment manual if she can demonstrate that: (1)  the

employer should reasonably have expected the employee to consider the employee manual to be a

promise from the employer to follow policies contained therein; (2) the employee reasonably

relied on the promise in the manual to her detriment; and (3) that injustice may be avoided only by

enforcing the promise. *See Vasey*, 29 F.3d at 1466.  Plaintiff cannot overcome the disclaimers on

every page of the Guidelines to create a genuine issue of fact as to whether Defendant should (or

could) have reasonably expected Plaintiff to consider the open-door policy to be a contractual

commitment changing the nature of at-will employment.  Moreover, Plaintiff herself stated that

she did not read the guidelines, defeating any possibility of establishing detrimental reliance.

Accordingly, Defendant's promissory estoppel claim must fail.

### ii.      *Defendant's Verbal Promises*

Plaintiff argues that Defendant is also subject to contractual duties to maintain an open-

door policy based on statements made by Defendant's human resources employees.  (Pl.'s Resp.,

Statement of Additional Undisputed Material Facts ¶ 110.)  Plaintiff's argument is wholly

unconvincing.  First, Plaintiff fails to specify who made such statements (other than "they,"

ostensibly in "HR"), when the statements were made to her, and, most importantly, what the

statements were.  (Def.'s Reply, Ex. M at 319–20 [Dep. of Connie Reynolds]; Compl., *passim*;

Pl.'s Resp., *passim*.)  In fact, when asked where Plaintiff obtained her knowledge of Defendant's

open-door policy, Plaintiff responded damningly, "[y]ou know, I don't really know that I was ever

really told about an open-door policy."  (Def.'s Reply, Ex. M at 319–20 [Dep. of Connie

Reynolds].)  Further, when asked how she knew that Defendant had such a policy, Plaintiff stated,

even more damningly, "[w]ell, I don't know that I even did know really.  I assumed in orientation

that I was told, but I don't know that to be honest with you."  (*Id.*)

-41-

It is a fundamental legal tenet that an "offer must not merely be complete in terms, but the terms must be sufficiently definite to enable the court to determine whether the contract has been performed." *Stice v. Peterson*, 355 P.2d 948, 952 (Colo. 1960) (citing *Newton Oil Co. v. Bockhold*, 176 P.2d 904, 908 [Colo. 1946]).  Plaintiff has given no specifications whatsoever of terms of the verbal offer she alleges Defendant gave her.  Indeed, Plaintiff herself appears unsure that Defendant gave her any verbal offer at all.  Without demonstrating so much as an offer from Defendant, to say nothing of Plaintiff's acceptance, Plaintiff cannot establish that Defendant owed a contractual duty.  Thus, Plaintiff's claim for breach of contract based on a verbal promise must fail.  Along a similar thread, Plaintiff's inability to establish that Defendant made a promise necessarily results in Plaintiff's inability to establish that Defendant could reasonably have expected Plaintiff to rely on any such promise.  Therefore, Plaintiff's claim for estoppel based on Defendant's verbal promise must also fail.

Plaintiff cannot establish that Defendant owed her a contractual duty to maintain an open-door policy with respect to Plaintiff's September 9, 2003 letter or the accusations contained therein under either a written or a verbal promise.  Therefore Defendant is entitled to summary judgment on Plaintiff's claims for breach of contract and promissory estoppel.

**3.     Conclusions**

Based on the foregoing it is therefore

ORDERED as follows:

1.     Defendant's motion for summary judgment (# 23) is GRANTED in part and DENIED in part.  Defendant's motion is GRANTED as to Plaintiff's claims for: (1) discrimination under the ADA, ADEA, and Title VII; (2) breach of contract; and (3) promissory

estoppel.  Defendant's motion is DENIED as to Plaintiff's claims for retaliation under the ADEA and Title VII.

2.      The court will hold a Final Pretrial Conference commencing at 10:00 o'clock a.m. on January 3, 2006, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

Dated this 16th of December, 2005.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge